IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH MUTAHI | ) | |
| | ) | Civil Action No. 13-304 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge David S. Cercone |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| CATHOLIC CHARITIES DIOCESE | ) | |
| OF PITTSBURGH | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS**

## I. RECOMMENDATION

For the reasons set forth below, it is respectfully recommended that Defendant's Motion to Dismiss be granted. Plaintiff's *pro se* Amended Complaint sets forth three (3) causes of action which, on the face of the Amended Complaint, fail to state any cognizable claim under the causes of action alleged and/or are clearly time barred. It is further recommended that opportunity to amend would be futile, as it does not appear, given the facts of record, that Plaintiff could make out a plausible claim.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Ruth Mutahi ("Mutahi"), was employed as a case worker for Catholic Charities from September, 2008 to March 2, 2009 (*i.e.*, less than six (6) months). Mutahi alleges that she

was directed to - and for a time did - fraudulently document a client as being seen at home when s/he was seen in Defendant's office.  Mutahi also alleges that she was directed to back-date agency and other documents -left by an employee on leave - for funding requirements/purposes, and that she observed – and expressed objection to- a secretary falsifying documents (specifically, creating paperwork for clients not seen/services not rendered, again for funding purposes).  As noted above, she was terminated in early March, 2009.  Mutahi's Amended Complaint indicates that she began another position with a Youth Services agency on October 22, 2012 (*i.e.*, 2-1/2 years later), although Court records appear to indicate that she is not presently employed.

Mutahi, represented by counsel, filed an action against Defendant by Praecipe in the Allegheny Court of Common Pleas on August 28, 2009 (GD-09-016622).  She states in her Amended Complaint that at some point she met with Defendant and was offered compensation, but the case did not settle.  Mutahi's counsel withdrew his State Court appearance in November, 2009, and Plaintiff filed her State Court Complaint *pro se* a year after her Praecipe, *i.e.*, September 2, 2010.  In her State Court Complaint, Mutahi alleged: Count I - Wrongful Discharge, Count II – Retaliation, and Count III – Punitives, asserting her refusal to participate in illegal practices, but including no statutory specifications/citations.  Defendant filed Preliminary Objections on September 16, 2010 and moved to dismiss on grounds that included Plaintiff's failure to exhaust administrative remedies and the legal insufficiency of the Complaint.  The State Court scheduled a hearing, for which Plaintiff failed to appear, and the Court granted Defendant's Preliminary Objections and dismissed the case with prejudice on October 29, 2010.[1]

---

[1] Cf. Defendant's Brief in Support of Motion to Dismiss (asserting *res judicata* as additional grounds for dismissal of this action).

Reconsideration was denied, and Plaintiff's appeal to the State Superior Court was quashed as untimely in July, 2011.

Plaintiff filed her *pro se* Complaint before this Court on March 1, 2013 (*i.e.*, one day before the four (4) year anniversary of her termination and more than 3-1/2 years after the filing of her State Court Praecipe against the same Defendant for the same employment discharge). She filed an Amended Complaint a few days later, on March 4, 2013 (ECF No. 2). Defendant's Motion to Dismiss was filed on March 21, 2013 (ECF No. 8). By this Court's Text Order of March 22, 2013 (ECF No. 10), Plaintiff was directed to file a response or amended complaint by April 11th; she failed to do either. By this Court's subsequent Text Order, Plaintiff was given "one more opportunity to comply" and to file by April 30, 2013. Plaintiff filed her Brief in Opposition to Defendant's Motion to Dismiss on April 25th (ECF No. 12), and there was an exchange of Replies filed by the parties.

Plaintiff's Amended Complaint alleges Count I - Breach of Contract; and Counts II and III (headed in the initial Complaint as "Intentional Discrimination Under Section 1981" and in the Amended Complaint as "Violation of Civil Rights Under Section 1981") for "intentional sexual discrimination" in the form of threatened "exposure of my private sex life" in response to objection to Defendant's fraudulent documentation practices. Mutahi now alleges that when she refused to continue mis-documenting, and expressed concern/objection to other observed mis-documentation, she was threatened "with exposure of my private and personal sex life and informed that if my employment with the Diocese continued that I would be transferred to the refugee services department of Catholic Charities." The Court notes that no such allegation, *i.e.*, a threat regarding disclosure of personal information/conduct (sexual or otherwise), was made in Mutahi's State Court Complaint for wrongful discharge and retaliation – despite its five (5) page

3

recitation of the factual background. In her Reply to Defendant's Reply to Plaintiff's Motion in Opposition (ECF No. 16), Plaintiff newly states, at paragraph 10, that the "claim of discrimination which could have been addressed" in her State Court action "was not filed due to [its] sensitive nature" but was a claim for same-sex sexual harassment/hostile work environment."

## III. STANDARD OF REVIEW

A Motion to Dismiss is an appropriate means of challenging the legal sufficiency of the Complaint. See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It is to be granted where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). In Iqbal, the Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Shortly therafter, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard as requiring that civil complaints set out "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210 (quoting Iqbal). And it set forth the following two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible

>claim for relief.' In other words, a complaint must do more than
>allege the plaintiff's entitlement to relief. A complaint has to
>'show' such an entitlement with its facts. . . . This 'plausibility'
>determination will be 'a context-specific task that requires the
>reviewing court to draw on its judicial experience and common
>sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

In assessing a Motion to Dismiss, the Court may consider not only the factual allegations that appear on the face of the Complaint, but also documents attached to or submitted with the Complaint, or incorporated into the Complaint by reference, as well as certain other evidence outside the Complaint/other authentic items of record. See generally, Pryor v. Nat'l Collegiate Athletic Ass'n., 228 F.3d 548, 560 (3d Cir. 2002); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994). More specifically, "[i]n resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally may consider the allegations in the complaint, as well as 'documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" State College Area School Dist. v. Royal Bank of Canada, 825 F.Supp.2d 573, 577-578 (M.D. Pa. 2011) (quoting Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)).

The Court also observes that *pro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations omitted); Haines v. Kerner, 404 U.S. 519 (1972).

## IV. ANALYSIS

### A.  Counts II and III - Section 1981

The Court concurs with Plaintiff that claims under Section 1981 (as opposed to, *e.g.*, claims under Section 1983) are subject to a four (4) year statute of limitations under the federal "catch all" provisions, rather than a two (2) year statute of limitations.  See Johnson v. R.R. Donneley & Sons, 541 U.S. 369 (2004); see also, *e.g.*, Verdin v. Weeks, 124 Fed. Appx. 92, 96 n. 2 (3d Cir. 2005).  Compare Defendant's Brief in Support of Motion to Dismiss (asserting time bar to Section 1981 claims under two year statute of limitations).  But Plaintiff cannot avail herself of this additional two (2) year window simply by citation to a statutory provision that is flatly inapplicable.  As Defendant correctly observes, Section 1981 provides constitutional protections against *racial* discrimination as to contracts, which is nowhere alleged.  Plaintiff makes no cognizable claim under Section 1981.

Moreover, even if this Court affords this *pro se* Plaintiff the consideration of evaluating the civil rights violation now alleged (*i.e.*, "intentional sexual discrimination") under potentially applicable constitutional protections, *e.g.*, those of Title VII or Section 1983, the two (2) year statute of limitations would indeed then apply and Plaintiff's claims would be clearly time barred.  See Factual and Procedural History, *supra*.  It also appears that Plaintiff either failed to exhaust her administrative remedies as required or failed to timely file related causes of action before this Court.  Compare Defendant's Preliminary Objections in Plaintiff's State Court action (asserting that "Plaintiff did not pursue or exhaust an administrative remedy prior to filing the within civil action.") with Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Following Equal Employment Commission's waiver of jurisdiction against Defendant Catholic Diocese, Plaintiff through counsel initiated litigation . . . on August 28, 2009 via a praecipe.")

Thus, even assuming Plaintiff made the requisite filings and exhausted her administrative remedies before the EEOC, she indicates that determination and Notice would have been issued prior to August 28, 2009, *i.e.*, more than 3-1/2 years prior to her Federal Court action. Finally, the Court observes that even had Plaintiff exhausted her administrative remedies and timely filed this action, her new allegation – underlying Counts II and III - that she was threatened with disclosure of private sexual information for failure to cooperate with falsifying documentation, is *not* within scope of the Federal constitutional protections against either sexual discrimination or harassment (*e.g.*, the related prohibitions of Title VII or Section 1983).

### B.  Count I - Breach of Contract

Plaintiff's Amended Complaint fails to allege any contract, and omits any specific allegations regarding the provisions allegedly breached. Rather, Plaintiff merely states in an entirely conclusory manner, at paragraph 11, that "[a]s a result of the contract breach" she has suffered severe damages. The Court observes that, as reflected in the State Court proceedings, Plaintiff was an "at will" employee subject to governing Pennsylvania law with regard to terms of employment and discharge. Plaintiff does reply, in her Brief in Opposition to Defendant's Motion to Dismiss, that she received a job description and employee handbook and that there was an "implied contract" that "all work to be performed . . . would be legal" and that her employer would not discriminate. The Court concurs with Defendant's analysis on this issue, see Brief in Support of Motion to Dismiss, and concludes that Plaintiff does not and could not under the circumstances of the case make out a "plausible" claim for any damages arising from breach of contract.

## V. CONCLUSION

Accordingly, for the above reasons, it is respectfully recommended that Defendants' Motion to Dismiss the Amended Complaint be granted. The Court specifically concludes, based on the explication above, that any further leave to amend the *pro se* Complaint would be futile. See e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (dismissal of *pro se* civil rights claim without amendment where it would be futile).

In accordance with the Magistrate Judges Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: August 9, 2013

Lisa Pupo Lenihan
Chief U.S. Magistrate Judge

cc: Ruth Mutahi

133 N. Street NW
Washington, DC 2005